UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
Areopi Rhea Stathatos, et al.,                      :
                                                    :
                              Plaintiffs,           :
                                                    :
                 -against-                          :          **OPINION**
                                                    :          06 Civ. 13138 (RLC)
Gala Resources, LLC, et al.,                        :
                                                    :
                              Defendants.           :
_____X

**ROBERT L. CARTER, District Judge**

On November 13, 2006, plaintiffs Areopi Rhea Stathatos, Lonette Hopewell and

Kia Frasier (all together, "plaintiffs") brought this action against defendants Gala

Resources, LLC ("Gala"); Carnegie Capital Corporation; Aaron Ziegelman

("Ziegelman"); Marjorie Ziegelman; Amy Ziegelman Avital; Jane Ziegelman Coe; Alan

Haberman; Linda Haberman; Howard Haberman; Robert Goldenberg; Linda Funding,

LLC; Benjamin Funding Corporation; Claudia Funding Corporation; Millpond Funding,

LLC; Haberman & Goldenberg, LLP; and the Ziegelman Foundation (all together,

"defendants"), asserting illegal termination, hostile environment and retaliation claims

under Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. Sec 2000e *et seq.*

("Title VII"), and New York's Executive Law § 290 *et seq.* (the "HRL").  They also

alleged claims of defamation, tortious interference, and intentional infliction of emotional

distress.

Plaintiffs have withdrawn their claims against Marjorie Ziegelman, Amy

Ziegelman Avital, Jane Ziegelman Coe, and Linda Haberman.

The remaining defendants now move for summary judgment pursuant to Rule 56, F. R. Civ. P., on plaintiffs' hostile environment, illegal termination and retaliation claims. Defendants also move for summary judgment on Stathatos's and Hopewell's intentional infliction of emotional distress claims.

## BACKGROUND

For purposes of this motion the facts are construed in the light most favorable to plaintiffs because they oppose summary judgment.

Gala loans money to real estate investors and developers and operates in an intensely competitive commercial environment. Ziegelman and Alan Haberman are Gala's senior founders and owners. Howard Haberman and Robert Goldenberg are attorneys at the firm. Gala hired Stathatos in February, 1996 to perform a variety of bookkeeping tasks. Her responsibilities steadily expanded, as did her access to confidential and proprietary business information.

Beginning in 2002, Stathatos engaged in a series of acquisitions to acquire title to real estate, for which she received financing from Northern Funding, a competing real estate lender founded by two former Gala employees. The principals at Gala and Northern funding had a tense relationship, so Stathatos did not tell anyone at Gala about those deals. When Ziegelman and Alan Haberman learned of them, they fired her, in November, 2004.

Lonette Hopewell, an African-American woman, started working at Gala in August, 2000 to perform administrative duties. She became pregnant, so Gala hired Kia Frasier, also an African-American woman, on October 18, 2004, with the expectation that

she would cover for Hopewell until her return from maternity leave.  Frasier had no expectation of continued employment by Gala beyond then.

Following Stathatos's termination, Alan Haberman told Hopewell and Frasier that Stathatos had been doing business with a competitor and to cease communicating with her on pain of termination.  On December 20, 2004, both were fired, purportedly for faxing their resumes to Stathatos.

Plaintiffs tell of tenures punctuated by casual, unblushing bigotry.

I.      Stathatos

Stathatos describes sexist incidents primarily involving ribald behavior by Ziegelman and Alan Haberman.  In the late 1990s Ziegelman offered Stathatos breast shaped candy while saying "lick it, don't bite it" (Fernandez Aff., Ex. A 107).  In summer 2004, Ziegelman grabbed Stathatos's buttocks and said, "nice" (id. at 360), which made Stathatos "very upset" (id.).  On unspecified occasions Ziegelman boasted about his Viagra induced sexual prowess (id. at 363).  In 2003 or 2004 Ziegelman "check[ed] out [her] ass" (id. at 461).  In 2002 or 2003 Alan Haberman told her that she had "dimples in [her] ass" (id. at 462).  Over the course of several months she was exposed to pornographic pictures when she was forced to purge a colleague's computer of pornographic website residue (id. at 420-23).  She complained to Alan Haberman and Howard Haberman about the problem, but says that "nothing ever happened" (id. at 427).  Ziegelman and Alan Haberman "constantly" openly speculated about Stathatos's and her mother's sex life and accused both of sleeping with competitors (id. at 378).  On unspecified occasions Alan Haberman made sexually tinged comments about Greeks

"doing things backwards," which Stathatos alleges referred to a sexual position (Pl.'s Counterstatement of Material Facts 9). On a number of unspecified occasions Alan Haberman made her uncomfortable by hugging her while saying "Oh baby" (Fernandez Aff., Ex. A 504-05). She also complains of puerile callousness. During an office holiday party in 2002 or 2003 a Gala client became aggressive toward Stathatos and "grabbed" (id. at 471) her repeatedly, and "chas[ed her] all night" (id. at 472). She approached Alan Haberman for help, asked that he "get him off of me" (id.). He teased her instead: "He likes you . . . he wants to date you" (id. at 471). She alleges that "all the guys were joking around, [saying,] 'oh, why don't you date him? Why don't you go out with him?'" (id. at 474-75). She testified that "[it] bothered [her] a lot that no one stopped it when I asked for help" (id. at 475).

Stathatos also recounts instances of racism. Ziegelman once said "blacks are so dumb" and conjectured about "blacks going into arrears" (Pl.'s Counterstatement of Material Facts 7). She alleges that Ziegelman once derided a Puerto Rican woman for "being too black" (Fernandez Aff., Ex. A 327). Alan Haberman told her that "Ziegelman doesn't want anybody black in the front" (id. at 328). Alan Haberman also complained that his secretary's hair was kinky (id. at 326).

II.     Hopewell

Hopewell alleges several instances of unwanted touching, including unspecified times when Alan Haberman rubbed her on the arms (Fernandez Aff., Ex. C 89), and one undated occasion when he rubbed her back (id. at 90). She told him that it made her uncomfortable and he never did it again (id.). In 2003 or 2004, while passing a male

4

colleague in a narrow hallway, he rubbed his pelvic area against her buttocks twice.  She complained to Alan Haberman about it, who told her that it would never happen again. (id. 42-43).  She heard Alan Haberman refer to the women in the office as "honey" (id. 75).  On an unspecified date Ziegelman offered her also breast shaped lollipops while commenting, "you don't bite them, you lick them" (id. at 103).  On an unspecified date Ziegelman showed her a magazine depicting naked and half-naked women and "said something to the effect of, Isn't she hot?" (id. at 127).  On unspecified occasions Alan Haberman compared the breast sizes of the women in the office, and commented about the breast sizes of women who visited the office (id. at 84); commented about the length of women's skirts, sometimes suggesting that they "should wear shorter skirts" (id. at 86); and talked openly about wanting to have sex with his personal trainer (id. at 88).

Hopewell also depicts a racially charged atmosphere.  On an unspecified date Ziegelman or Alan Haberman (she cannot remember which) told her to stop covering for the designated receptionist whenever the receptionist was away because, she claims, they wanted someone "more presentable" at the front desk (id. at 30); from that point forward, if the front needed coverage, she would answer the phone from her desk in the back (id. at 32).  On an unspecified date Ziegelman offered her a piece of banana in a manner she thought played on racist associations (id. at 97-99).  Alan Haberman once referred to a broker's girlfriend as "[t]he little black girl" (id. at 54).  She also alleges that Gala's policy excluding children from the office was discriminatorily applied.  In 2002 or 2003 she was specifically asked not to bring her toddler to the office, while Ziegelman's and

Alan Haberman's grandchildren, and Robert Goldenberg's daughter, who are white, were allowed to visit (id. at 49-51).

     III.    <u>Frasier</u>

     Frasier also depicts a sexually and racially charged atmosphere at Gala.  On an unspecified date in 2004 she saw Alan Haberman compare underwear with a female colleague, going so far as to pull up his shirt to reveal the trim of his silk boxer shorts (Fernandez Aff., Ex. B 19).  On an unspecified date in 2004 she overheard him ask Stathathos about "getting laid last night" (id. at 21) and accuse Stathatos of sleeping with a competitor (id. at 22).  On an unspecified date in 2004 she overheard references to a coworker as a "porn star" (id. at 20).

     On an unspecified date in 2004 Frasier heard Alan Haberman refer to Hopewell as "the pregnant black girl" (Decl. of David Cohen, Ex. C 53).  She also recounts a 2004 banana incident also involving Ziegelman[1], who "opened up the banana and peeled it down and turned around and said, 'hey, ladies, would you like a piece of my banana" and then turned back around to [Alan Haberman and some other men] and they all started laughing" (Fernandez Aff., Ex. B 13).  She believes that the gesture amounted to Ziegelman "trying to call [her] a monkey" (id. at 15).

     On the afternoon November 24, 2004, Frasier's daughter visited the office following a half day of school.  Her daughter sat in the front office as other, white

---

[1] It is unclear from the record whether this incident is the same banana incident Hopewell describes. According to Hopewell, Stathatos was present when Ziegelman derisively offered her a piece of banana, but she makes no mention of Fraiser.  By contrast, Frasier states that Hopewell was present when Ziegelman derisively offered her a piece of banana, but she makes no mention of Stathatos.

children played in the area.  Ziegelman asked that Frasier's daughter be moved to increasingly secluded areas, while he allowed the other children to remain in the front. Frasier became upset about her daughter's treatment (Decl. of David Cohen, Ex. C 48-52).

    IV.    <u>Sign-in sheet policy</u>

Plaintiffs also complain that Gala's sign-in sheet policy evinced sexist attitudes. In late 2004, Gala started using sign-in sheets to track the attendance of hourly clerical staffers.  Plaintiffs fell under this policy, as did several other female employees. Benjamin Paskesz was the only male employee to fall under the policy.  But Paskesz flouted the policy with impunity, refusing to sign in and out.  Stathatos perceived discrimination, which bothered her so much that she, along with Hopewell and Frasier, refused to abide by the policy, in protest.  Stathatos complained to Alan Haberman about the discriminatory application of the policy and ultimately threatened to quit over the matter.  Alan Haberman became "very pissed off" (Decl. of David Cohen, Ex. A 241) and said to her just before she was fired, "If you guys don't sign in, I'm going to fire all of you" (<u>id.</u>).  Stathatos was terminated approximately one month later.

## DISCUSSION

    I.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate where the parties' submissions demonstrate "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  F. R. CIV. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a summary judgment motion, the court must resolve all ambiguities and draw all inferences in favor of the non-moving party. Id. at 255. It is often difficult to apply summary judgment analysis in employment discrimination cases because they necessarily turn on the intent of the alleged discriminator, and plaintiffs will rarely uncover direct evidence of discriminatory intent. Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 464-65 (2d Cir. 1989). Nonetheless, a plaintiff must produce some evidence from which a reasonable inference of discrimination can be drawn. McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). For a plaintiff to survive a motion for summary judgment in a discrimination case, "she must offer 'concrete particulars' to substantiate her claim." Duprey v. Prudential Ins. Co. of America, 910 F.Supp. 879, 883 (N.D.N.Y. 1996) (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).

II.     Claims against Benjamin Funding Corp.; Claudia Funding Corp.; Linda Funding, LLC; Haberman & Goldenberg, LLP; Millpond Funding, LLC; and the Ziegelman Foundation

Defendants move to dismiss plaintiffs' claims against Benjamin Funding Corp.; Claudia Funding Corp.; Linda Funding, LLC; Haberman & Goldenberg, LLP; Millpond Funding, LLC; and the Ziegelman Foundation. Defendants argue that none exercised dominion or control over Gala, and none played a direct role in any event allegedly giving rise to this complaint. Plaintiffs have not addressed these claims in their opposition papers, so they are deemed abandoned.

III.    Title VII and HRL claims

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. Sec 2000e-2(a)(1).  The HRL provides, in relevant part, that "[i]t shall be an unlawful discriminatory practice . . . for an employer . . . because of an individual's . . .race [or] . . . sex . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. EXEC. L. § 296(1)(a).  "We treat Title VII and [HRL] discrimination claims as analytically identical, applying the same standards of proof to both claims."  Salamon v. Our Lady of Victory Hosp., 514 F.3d 217, 226 fn.9 (2d Cir. 2008).

A.    Hostile Work Environment

 "[A] plaintiff claiming he or she was the victim of an unlawful hostile work environment[2] must elicit evidence from which a reasonable trier of fact could conclude '(1) that the workplace was so permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of . . . her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (quoting Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 436 (2d Cir. 1999)).  Courts should consider the "frequency of the discriminatory conduct; its

---

[2] "Generally, the same standards apply to both race-based and sex-based hostile environment claims."  Richardson, 180 F.3d 426, fn 2 (citing Torres v. Pisano, 116 F.3d 625, 630 (2d Cir. 1997)).

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys. Inc., 510 US 17, 23 (1993).  Courts are required to view the totality of the circumstances, to consider the factors cumulatively to obtain a realistic view of the work environment.  The evidence must show not only that plaintiff perceived her environment to be abusive due to her sex or race but that an objective analysis of her working conditions would yield a similar result.  Id. at 21.

"[H]ostile work environment claims present 'mixed question[s] of law and fact" that are 'especially well-suited for jury determination.'" Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 605 (2d Cir. 2006) (quoting Richardson, 180 F.3d at 437). "[S]ummary judgment is appropriate only where application of the law to those undisputed facts will reasonably support only one ultimate conclusion." Richardson, 180 F.3d at 438 (see also Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997) ("Summary judgment is designed to pierce the pleadings to flush out those cases that are predestined to result in a directed verdict."))  "An Article III judge is not a hierophant of social graces.  Evaluation of ambiguous acts . . . presents an issue for the jury." Gallagher v. Delaney, 139 F.3d 338, 347 (2d Cir. 1998).

Having reviewed the entire record, the court cannot conclude that no rational juror could find that defendants' conduct resulted in "an intolerable alteration of [plaintiffs'] working conditions."  Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000).

       1.      <u>Stathatos</u>

Stathatos's allegation that Ziegelman intentionally groped her buttocks can alone defeat defendants' motion for summary judgment.  Not only could a reasonable jury find that this primitive, humiliating gesture worked a transformation of her workplace, but the law in this Circuit is clear that that "even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment' under Title VII."  <u>Richardson</u>, 180 F.3d at 439 (<u>quoting Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1305 (2d Cir. 1995)).  Her other allegations of unwanted touching, sexually suggestive teasing, open speculation about her sex life, and exposure to pornography buttresses the court's conclusion that a triable issue obtains as to whether the harassment she alleges was "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse."  <u>Torres</u>, 116 F.3d at 635.

       2.      <u>Hopewell</u>

Hopewell has also adduced enough evidence to survive summary judgment on her sexually hostile work environment claim.  If a rational jury were to credit her allegations that Alan Haberman touched her shoulders and arms, that she was exposed to sexually explicit conversations and photographs, and that a male colleague intentionally rubbed his crotch against her buttocks twice, it could deem Gala's conduct to have amounted to an intolerable alteration of her working conditions.

Hopewell has also alleged facts sufficient to support a race based hostile work environment claim.  If a rational jury were to credit her allegations that the company

policy excluding children from the office was discriminatorily applied, that she was asked to refrain from covering for the receptionist because of defendants' racial biases, and that Ziegelman offered her a banana in a manner that played upon racist associations, it could find that her work environment became sufficiently hostile to alter the conditions of her employment for the worse.

3.   <u>Frasier</u>

Finally, Frasier has also alleged facts sufficient to support a gender based hostile environment claim.  Although she does not allege that she was the target of any sexually inappropriate conduct, her allegations that she witnessed sexually charged behavior and overheard sexually charged comments about her colleagues, sexually explicit conversations, and sexist jokes, when considered in light of the sexually charged atmosphere at Gala, could support a jury finding that her workplace was violative of Title VII.

A reasonable jury could also find that defendants subjected Frasier to a hostile work environment on the basis of her race.  Her allegation that her daughter was removed to a back office when she visited in November 2004, while other, white children were left to play in the front office, is by itself sufficient to support a hostile work environment claim.  If a jury believes that Ziegelman segregated Frasier's daughter from other, white children, it could reasonably infer that this act created an objectively hostile or abusive work environment.

B.   <u>Statute of limitations; continuing violations</u>

12

Defendants argue that plaintiffs' Title VII and the HRL harassment claims are time barred.  Timely filing of a charge of discrimination with the EEOC is a prerequisite to filing a Title VII complaint in federal court.  See 42 U.S.C. Section 2000e-5(b).  In New York, a plaintiff must file a charge of discrimination with the EEOC within three hundred days of the alleged discriminatory conduct.  See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).  The three hundred day period serves as a statute of limitations, and claims regarding acts that occurred more than three hundred days prior to the employee's initiation of administrative review are time-barred.  See Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001).  HRL claims are subject to a three-year statute of limitations.  Ritterband v. Hempstead Union Free Sch. Dist., No. 06-cv-6628 (DRH)(ETB), 2008 WL 3887605, at *9 fn.9 (E.D.N.Y. Aug. 20, 2008) (citing Bonner v. Guccione, 178 F.3d 581, 584 (2d Cir.1999)).  Stathatos filed a charge of discrimination with the EEOC on September 2, 2005; Hopewell filed a charge of discrimination with the EEOC on October 17, 2005; and Frasier filed a charge of discrimination with the EEOC on October 14, 2005.  Defendants urge the court to disregard Stathatos's, Hopewell's and Frasier's Title VII claims based on discriminatory acts occurring before November 6, 2004; December 19, 2004; and December 18, 2004; respectively.  Defendants argue that plaintiffs describe  isolated events that fail to demonstrate the existence of ongoing discriminatory policies or practices, or to demonstrate that defendants permitted the alleged discrimination to continue unremedied for so long as to amount to a discriminatory policy or practice.  Defendants also urge the court to disregard any HRL

claims based on discriminatory acts occurring prior to November 13, 2003, three years prior to the filing of plaintiffs' complaint.

Plaintiffs argue that the limitations periods should be tolled under the "continuing violation" exception.  The continuing violation doctrine applies to claims of a very limited scope.  Title VII claims that seek recovery for discrete incidents of discrimination may not be reviewed under the continuing violation doctrine, Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002), but where the plaintiff alleges that the defendant has created a hostile work environment, the continuing violation doctrine is applicable, id. at 118.  Under this exception, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  Labert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993) (citations omitted).  The continuing violation exception also applies to claims under the HRL.  See Lee v. Overseas Shipholding Group, Inc., No. 00 Civ. 9682 (DLC), 2001 WL 849747, at *8 (S.D.N.Y. July 30, 2001) (citing cases).  Since plaintiffs sufficiently pleaded hostile work environment claims they can demonstrate a continuing violation if each "at the very least allege[s] that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period."  Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004).

Stathatos's allegations are accompanied by phrases like "every day" (Fernandez Aff., Ex. A 345) and "[raunchy] jokes . . .  were constant" (id. at 362), thus "implying that the alleged conduct occurred throughout her employment."  EEOC v. Rotary Corp.,

297 F.Supp.2d 643, 660 (N.D.N.Y. 2003).  Her allegations, if true, indicate continuous

exposure to sexually charged behavior and offensive comments that pre-date and post-

date November 6, 2004.  As such, her allegations amount to a claim that she was

subjected to a continuous practice and policy of discrimination that did not cease until she

was terminated, and they can all be considered part of Stathathos's sexual harassment

claim.  Defendants' motion to dismiss Stathatos's hostile work environment claim as time

barred is denied.

Hopewell's sex harassment allegations are also accompanied by phrases like

"always" (Fernandez Aff., Ex. C at 82) and "there were many instances" (id. at 85), thus

also implying that the alleged conduct occurred for the duration of her employment.

These allegations are sufficient to defeat defendants' summary judgment motion on

statute of limitations grounds.  Defendants' motion to dismiss Hopewell's hostile work

environment claim as time barred is denied.

Hopewell's Title VII racially hostile work environment claim is time barred,

however.  She does not allege that any of the conduct giving rise to that claim occurred

after 2003.  But her racially hostile work environment claim is timely under the HRL.

Accordingly, defendants' motion for summary judgment on Hopewell's racially hostile

work environment claims is granted as to her Title VII claim and denied as to her HRL

claim.

Frasier's race harassment claim is also timebarred under Title VII, and cannot be

redeemed by the continuing violations theory because she does not allege that any

racially hostile acts took place within the 300 day limitations period.  Frasier's race

harassment claim is timely under the HRL, however.  Accordingly, defendants' motion

for summary judgment on Frasier's racially hostile work environment claims is granted

as to her Title VII claim and denied as to her HRL claim.

Frasier's sexual harassment claims may proceed.  She alleges that sexually-

charged remarks or jokes in the office were "going on every day" (Fernandez Aff., Ex. B

18), and remembers "hearing sexual comments every day in the office" (id. at 53), thus,

again, implying that the alleged conduct occurred for the duration of her employment.

Defendants' motion to dismiss Frasier's sexually hostile work environment claims as

time barred is denied.

## C.    Individual Defendants, Title VII

Individuals may not be held liable under Title VII.  See Tomka, 66 F.3d at 1313.

Therefore, the court must dismiss the Title VII claims against Aaron Ziegelman, Alan

Haberman, Howard Haberman, and Robert Goldenberg.

## D.    HRL claims against Howard Haberman and Robert Goldenberg

Defendants argue that plaintiffs have no viable HRL claims against Howard

Haberman or Robert Goldenberg individually.  "Section 296(6) of the [HRL] provides

that it shall be an unlawful discriminatory practice 'for any person to aid, abet, incite,

compel or coerce the doing of any of the acts forbidden under this article, or attempt to do

so." Spilkevitz v. Chase Inv. Servs. Corp., No. Cv-08-3407 (SJF)(ETB), 2009 WL

2762451, at *6 (E.D.N.Y. Aug. 27, 2009) (citing N.Y. Exec. Law §296(6)).  Individual

liability may lie under the HRL on an individual who "actually participates in the conduct

giving rise to a discrimination claim." <u>Feingold v. New York</u>, 366 F.3d 138, 157-58 (2d Cir. 2004) (quoting <u>Tomka</u>, 66 F.3d at 1317).

1.   <u>Stathatos</u>

Stathatos alleges that Howard Haberman and Goldenberg aided and abetted the creation of a hostile work environment by participating in the harassing behavior and by not acting to prevent others from engaging in harassing behavior.  In specific, she provides admissible evidence that Goldenberg accused her of sleeping with a competitor, and that she overheard Howard Haberman joke about a female colleague's nipples. These allegations are sufficient to create an issue of fact as to whether Howard Haberman and Goldenberg participated in the conduct giving rise to her discrimination claims. Accordingly, defendants' motion for summary judgment as to Stathatos's HRL claims against Howard Haberman and Goldenberg is denied.

2.   <u>Hopewell</u>

Hopewell accrues no support for her claim that Goldenberg aided and abetted the creation of a hostile work environment by either participating in the harassing behavior or by not acting to prevent others from engaging in harassing behavior.  Furthermore, Hopewell does not allege that Howard Haberman engaged in any sexual harassment or racial discrimination (<u>see</u> Fernandez Aff., Ex. B 44).  Defendants' motion for summary judgment on Hopewell's HRL claims against Howard Haberman and Goldenberg is granted, those claims are dismissed.

3.   <u>Frasier</u>

Finally, Frasier does not allege that either Howard Haberman or Goldenberg participated in any of the conduct giving rise to her discrimination claims, therefore Frasier's HRL claims against Howard Haberman and Goldenberg are dismissed.

E.      Illegal Termination Claims

Title VII prohibits an employer from discharging any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. Sec. 2000e-2 (a)(1). In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court set forth the burden shifting framework under which Title VII discrimination claims are analyzed. Plaintiff has the initial burden of proving a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802.  If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for her termination.  Id.  If defendant succeeds on its burden, the presumption of animus "drops out of the picture."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993). Plaintiff must then show that defendant's action was in fact the result of impermissible discrimination.  Holcomb v. Iona College, 521 F.3d 130,138 (2d Cir. 2008).  "The plaintiff need not prove that the explanation offered by the employer was entirely false 'but only that . . . [the defendant's] stated reason was not the only reason' and that consideration of an impermissible factor 'did make a difference.'"  Phillips v. Dow Jones & Co., No. 04 Civ. 5178 (DAB), 2009 WL 2568437, at *9 (S.D.N.Y. Aug. 17, 2009) (quoting Montana v. First Fed Sav. & Loan Ass'n of Rochester, 869 F.2d 100, 105 (2d Cir. 1989)).  Plaintiff's burden at this stage is to prove that "the evidence, taken as a

whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." James v. New York Racing Ass'n., 233 F.3d 149, 156 (2d Cir. 2000); see also Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) (courts should examine the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff") (quoting Reeves, 530 U.S. at 143).  To defeat the motion for summary judgment plaintiff "must present evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole or in part by . . . discrimination." Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997).

"[T]rial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." Chertkova v. Conn. Gen. Life. Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996).  "Since it is rare indeed to find in an employer's records proof that a personnel decision was made for a discriminatory reason, whatever other relevant . . . materials are before the district court must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination." Id.

### 1.   Prima Facie Case

Defendants argue that plaintiffs cannot make out a prima facie case of impermissible discrimination because none suffered an adverse action under circumstances giving rise to an inference of discrimination, as no inference of discrimination can be drawn where the principals of a closely-held company that hired plaintiffs are the same that later fired them.

Indeed, courts in this Circuit have found it unlikely that a person's termination can be attributed to discrimination when the person responsible for the claimant's hiring fired her.  See, e.g., Grady, 130 F.3d at 560 ("when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [that person] an invidious motivation that would be inconsistent with the decision to hire.") But this evidence is probative, not determinative.  See id. ("each case must involve an examination of all the circumstances").  Drawing all permissible inferences in plaintiffs' favor, keeping in mind that their burden at this stage is *de minimus,* Abdu-Brisson v. Delta Airlines, Inc., 239 F.3d 456, 467 (2d Cir. 2001), and keeping in mind that "there is no unbending or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision . . . [and the] fourth element [of the prima facie case] set forth in McDonnel Douglas is a flexible one that can be satisfied differently in differing factual scenarios," Chertkova, 92 F.3d at 81 (internal citations omitted), the court finds that plaintiffs have alleged sufficient circumstances to give rise to an inference of discrimination.

Gala articulated a legitimate, nondiscrimatory reason for Stathatos's, Hopewell's and Frasier's terminations: Stathatos did business with a competitor, and Hopewell and Frasier violated Gala's prohibition against contacting her.  Plaintiffs are incredulous that Ziegelman and Alan Haberman could have been so upset about Stathatos's dealings with Northern Funding, but there is enough evidence that defendants were genuinely angered by plaintiffs' behavior to render their explanation plausible.  Gala has successfully rebutted plaintiffs' prima facie case of discrimination.

Gala's proffer causes "the presumption of discrimination created by the prima facie case [to drop] out of the analysis, and [Gala] will be entitled to summary judgment . . . unless [plaintiffs] can point to evidence that reasonably supports a finding of prohibited discrimination."  Mario v. P&C Food Markets, Inc., 313 F.3d 758, 767 (2d Cir. 2002) (quoting James, 233 F.3d at 154) (internal quotation marks omitted).  Plaintiffs must now show "by a preponderance of the evidence that the legitimate reasons offered by [Gala] were not its true reasons but were a pretext for discrimination," id., (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 US 133, 143 (2000)), such that a reasonable jury could legitimately conclude that their terminations were based, at least in part, on their gender and –in Frasier's and Hopewell's cases- their race.

Defendants argue that plaintiffs have not proffered evidence of pretext.  Plaintiffs rebut that they have presented enough circumstantial evidence to create an issue of material fact about whether their termination was motivated by impermissible motives. "It is well settled . . . that employment discrimination plaintiffs are entitled to rely on circumstantial evidence."  Holcomb, 521 F.3d at 141 (citing Desert Palace, Inc. v. Costa, 539 U.S. 90, 92 (2003)).  Furthermore, "circumstances contributing to a permissible inference of discriminatory intent may include the employer's invidious comments about others in the protected group, or the more favorable treatment of employees not in the protected group."  Vasquez v. Claire's Accessories, Inc., 392 F.Supp.2d 342, 350 (D.Ct. 2005).  In this case, having reviewed the entire record, the court finds that the evidence plaintiffs' proffer is enough to create an issue of material fact about whether impermissible motives played any part in defendants' decision to terminate them.  Gala's

stated reasons for firing plaintiffs are sufficient to carry their burden but are so tainted by defendants' conduct and the attitudes it may evince that serious doubts obtain about whether defendants acted at least in part based upon impermissible motives.  Their demeaning remarks and offensive behavior create room for the inference that their decision to terminate plaintiffs was based, at least in part, upon a racially and sexually discriminatory motive.  See Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 116 (2d Cir. 2007) (discriminatory remarks are relevant because they tend "to show that the decision maker was motivated by assumptions or attitudes relating to the protected class").  Therefore this is a matter for the jury.

        F.     Retaliation

Title VII prohibits an employer from discriminating against an employee because she has opposed any practice made an unlawful employment practice by Title VII.  42 U.S.C. Sec 2000e-3(a).  In order to establish a prima facie case of retaliation under Title VII, "a plaintiff must show (1) that the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse action."  Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996).  If plaintiff establishes a prima facie case, the burden shifts to defendant to present a legitimate nondiscriminatory reason for plaintiff's termination.  McDonnell Douglas Corp., 411 U.S. at 802.  If defendant meets this burden the presumption disappears and to prevail plaintiff's evidence must be sufficient for a reasonable juror to find a retaliatory motive in plaintiff's termination.  See James, 233 F.3d at 154; see also

Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001) (Under Title VII is not necessary that the retaliatory motive be the sole cause of the adverse employment action, but rather only that it be a substantial or motivating factor, even where there are legitimate reasons for undertaking the disputed action).

1.   Stathatos

Stathatos asserts that she was retaliated against for complaining about activity she believed to be illegal, including forging extension letters and making fraudulent representations to banks.  She also claims that she was retaliated against for repeatedly complaining to Alan Haberman and Howard Haberman about the discrimination she observed and experienced at Gala, including her complaint about the discriminatory application of the company's sign-in policy.

Protected activity is that which opposes unlawful employment practices under Title VII.  See 42 U.S.C. Section 2000e-3(a).  Her complaints about being forced to participate in alleged bank scams were not intended to protest or oppose a violation of Title VII so they are not protected.  See, e.g., Delgado v. Puerto Rican Family Inst. Inc., No. 97 Civ. 7122 (DAB), 2001 WL 964000, at *8 (S.D.N.Y Aug. 23, 2001) (only complaints that involve discriminatory employment practices are protected under Title VII.); Adeniji v. Admin. for Children Servs., 43 F.Supp.2d 407, 421 (S.D.N.Y.1999) ("Title VII does not protect whistle-blowers").  On the other hand, her complaints about perceived sexually discriminatory conduct constitute protected activity.  See, e.g., Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 134 (2d Cir.1999) (requiring a

plaintiff to have a reasonable, good faith belief that the employment practice complained of is unlawful in order to demonstrate participation in a protected activity).

Stathatos's evidence is sufficient to establish a presumption of unlawful retaliation.  She complained of discrimination directly to defendants and she was terminated, therefore she satisfies the first three elements of her prima facie case.  Stathatos also presents direct and circumstantial evidence of causation.  First, Alan Haberman threatened to fire her when she complained to him about the putatively discriminatory sign-in sheet policy.  Second, her termination and last protected activity took place in such close temporal proximity, one month, as to be circumstantial evidence of causation.  See, e.g., Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed., 444 F.3d 158, 168 (2d Cir.2006) ("A plaintiff may establish causation indirectly by showing [her protected activity] was closely followed in time by the adverse employment decision.").  Although defendants' intervening discovery of Stathatos's dealings with Northern Funding weakens the inference of causation that arises from this temporal connection, this temporal proximity helps to support an inference of retaliation.  Stathatos discharges her burden.

Defendants articulate a legitimate, non-retaliatory reason for Stathatos's discharge: she was terminated for doing business with a competitor.

Gala's submission eliminates the presumption of retaliation, but, in light of Alan Haberman's blatant threat to fire Stathatos for complaining about putative discrimination, it does not quiet all doubts about whether retaliatory animus influenced defendants' decision.  In the court's estimation, a reasonable juror viewing the evidence in the light

most favorable to Stathatos could find that she was terminated, at least in part, because she engaged in protected activity.  Accordingly, defendants' motion for summary judgment dismissing Stathatos's retaliation claim is denied.

2.   <u>Hopewell</u>

After Gala terminated Hopewell in December 2004, Alan Haberman promised to pay for her health insurance until January 31, 2005.  Alan Haberman rescinded that promise because Hopewell filed suit in New Jersey state court in late December 2004.  Defendants argue that Hopewell's retaliation claim must nevertheless fail because she did not have an employment relationship with Gala when Alan Haberman rescinded his promise.

Title VII "protects individuals from actions injurious to *current* employment or the ability to *secure future* employment."  <u>Wanamaker v. Columbian Rope Co.</u>, 108 F.3d 462, 466 (2d Cir. 1997) (italics in the original).  Hopewell proffers no evidence that Gala's recision of its promise to pay for her health insurance compromised her employment prospects.  Defendants' motion for summary judgment on Hopewell's Title VII retaliation claim is granted.

Hopewell's HRL retaliation claim, on the other hand, survives summary judgment.  Defendants argue that the HRL's prohibition against retaliation for engaging in protected activity also does not extend to former employees, but New York courts have held otherwise.  <u>See</u> <u>Landwehr v. Grey Adver. Inc.</u>, 211 A.D.2d 583, 584 (1st Dep't

1995) ("There is no requirement [under the HRL] that the retaliatory conduct occur against a current employee") (citing Executive Law § 296(1)(e); Administrative Code of City of New York § 8-107(7)); see also Hernandez v. New York City Law Dept. Corp. Counsel, No. 94 Civ. 9042 (AJP)(SS),1997 WL 27047, at *20 (S.D.N.Y. Jan. 23, 1997) ("New York courts have held that, at least in certain circumstances, the [HRL applies] to former employees").  Accordingly, defendants' motion for summary judgment on Hopewell's HRL claim for retaliation is denied.

### F.   Intentional Infliction of Emotional Distress

Under New York law, to state a claim for intentional infliction of emotional distress, a plaintiff must demonstrate: 1) extreme and outrageous conduct; 2) intent to cause, or to disregard a substantial probability of causing, severe emotional distress; 3) a causal connection between a defendant's conduct and the injury suffered; and 4) that the plaintiff endures severe emotional distress. Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 121 (1993).  Only conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" can give rise to a claim of intentional infliction of emotional distress. Id. at 122.

### 1.   Stathatos

Stathatos's allegations are sufficient to sustain a claim for intentional infliction of emotional distress.  Courts have observed that a plaintiff must allege sexual battery in order to survive a motion for summary judgment in the sexual harassment context.  See

Ponticelli v. Zurich American Ins. Group, 16 F.Supp.2d 414, 440-441 (S.D.N.Y. 1998) (collecting cases).  By claiming that Ziegelman grabbed her buttocks, and that she became "really upset" (Fernandez Aff., Ex. A 359), Stathatos has raised an issue of fact as to whether Ziegelman's conduct rises to the level demanded under New York law.

2.  <u>Hopewell</u>

Hopewell's allegations are also sufficient to sustain a claim for intentional infliction of emotional distress.  By claiming that a colleague twice rubbed his crotch against her buttocks, she has raised an issue of fact as to whether the behavior she attributes to defendants rises to the level demanded under New York law.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is granted, in part, and denied, in part, as follows:

As to Stathatos's sexually hostile work environment claim, which alleges discrimination in violation of Title VII and the HRL, defendants' motion is **DENIED**.

As to Stathatos's illegal termination claim, which alleges discrimination in violation of Title VII and the HRL, defendants' motion is **DENIED**.

As to Stathatos's retaliation claim, which alleges discrimination in violation of Title VII and the HRL, defendant's motion is **DENIED**.

As to Stathatos's intentional infliction of emotional distress claim, defendants' motion is **DENIED**.

As to Hopewell's sexually hostile work environment claim, which allege discrimination in violation of Title VII and the HRL, defendants' motion is **DENIED.**

As to Hopewell's racially hostile work environment claim, which alleges discrimination in violation of Title VII and the HRL, defendants' motion is **GRANTED** as to the Title VII claim, but **DENIED** as to the HRL claim.

As to Hopewell's illegal termination claim, which alleges discrimination in violation of Title VII and the HRL, defendants' motion is **DENIED.**

As to Hopewell's retaliation claim, which alleges discrimination in violation of Title VII and the HRL, defendants' motion is **GRANTED** as to the Title VII claim, but **DENIED** as to the HRL claim.

As to Hopewell's intentional infliction of emotional distress claim, defendants' motion is **DENIED.**

As to Frasier's sexually hostile work environment claim, which alleges discrimination in violation of Title VII and the HRL, defendants' motion is **DENIED.**

As to Frasier's racially hostile work environment claim, which alleges discrimination in violation of Title VII and the HRL, defendants' motion is **GRANTED** as to the Title VII claim, but **DENIED** as to the HRL claim.

As to Frasier's illegal termination claim, which alleges discrimination in violation of Title VII and the HRL, defendants' motion is **DENIED**.

Defendants' motion for summary judgment on plaintiffs' claims against Benjamin Funding Corp.;Claudia Funding Corp.; Linda Funding, LLC; Haberman & Goldenberg, LLP; Millpond Funding, LLC; and the Ziegelman Foundation is **GRANTED.**

Defendants' motion of summary judgment on plaintiffs' Title VII claims against

Aaron Ziegelman, Alan Haberman, Howard Haberman, and Robert Goldenberg,

individually, is **GRANTED.**

Defendants' motion for summary judgment on plaintiffs' HRL claims against

Howard Haberman and Robert Goldenberg, individually, is **DENIED** as to Stathatos, but

**GRANTED** as to Hopewell and Frasier.

**IT IS SO ORDERED.**
DATED:      New York, New York
            May 20, 2010

_____
Robert L. Carter
United States District Judge